# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| **MELISSA SAULSBERY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:19-CV-00074-NCC |
| ) | |
| **MARK TWAIN WATER ZONE, LLC,** ) | |
| **BRYANT FRIENDSWOOD** ) | |
| **MANAGEMENT COMPANY, and** ) | |
| **BRUCE BRYANT d/b/a LEGACY RV** ) | |
| **RESORTS,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Exclude the Testimony of Philip Rosescu (Doc. 100).  The motion is fully briefed and the Court has heard argument from the parties (Docs. 101, 102, 106, 110).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 17).  For the following reasons, Plaintiff's Motion to Exclude the Testimony of Philip Rosescu (Doc. 100) will be **GRANTED in part and DENIED in part**.

### I.  Background

Plaintiff Melissa Saulsbery ("Plaintiff") filed this action in the Circuit Court of Ralls County, Missouri, alleging negligence against Defendants Mark Twain Water Zone ("MTWZ") and Collin Nimsgern ("Nimsgern") in relation to injuries she suffered using a waterslide at Mark Twain Landing water park (Doc. 5).  Nimsgern, a Wisconsin resident, was another patron who collided with Plaintiff (Doc. 36 at 5).  MTWZ is the Missouri limited liability company that

operates Mark Twain Landing water park (Doc. 36 at 2).  Its only member is Bruce Bryant, a Texas resident (Doc. 1 at 2).

MTWZ removed the action to this Court on the basis of diversity jurisdiction (Doc. 1).  Plaintiff amended her complaint to add as Defendants Bruce Bryant d/b/a Legacy RV Resorts ("Bryant"), Bryant Friendswood Management Company ("BFMC"), and Legacy Resort Communities, LLC d/b/a Legacy RV Resorts ("LRC"), but later voluntarily dismissed LRC (Doc. 36, 57).  Bryant and BFMC, a Texas corporation, had employees operating the Mark Twain Landing water park (Doc. 36 at 7, 10).

Defendants filed crossclaims against Nimsgern, seeking an allocation of comparative fault (Docs. 59, 62, 63).  This action was then stayed pending bankruptcy proceedings filed by Nimsgern in the Eastern District of Wisconsin (Docs. 77-80).  After the U.S. Bankruptcy Court for the Eastern District of Wisconsin entered an order of discharge and closed Nimsgern's case, the stay was lifted, and this Court dismissed Nimsgern from this action based on the discharge order (Docs. 83, 92).  The remaining claims in this action are three counts of negligence: Count I against MTWZ (Doc. 36 at 2), Count III against BFMC (*id.* at 7), and Count IV against Bryant (*id.* at 10).

Plaintiff alleges as follows.  On July 25, 2015, Plaintiff was injured on a waterslide at the Mark Twain Landing water park in Monroe City, Missouri in Ralls County, Missouri (*id.* at 2).  Only one employee, Maneerat Sangsud, was attempting to monitor the entrances to both the Purple Punch or "Bomber" slide and the Orange slide, in violation of BFMC and Bryant's safety rules for operation of the slides (*id.* at 3, 7, 11).  Nimsgern was permitted to enter the Purple Punch slide immediately after Plaintiff (*id.* at 3).  In the splashdown area at the bottom of the

slide, Plaintiff was struck from behind by Nimsgern (*id.* at 3). Plaintiff suffered severe injuries to her back, hips and ribs, and other parts, and required hip surgery (*id.* at 4).

## II.  Standard

The Court must act as a gatekeeper for all expert testimony, ensuring that it is "'not only relevant but reliable.'" *Level One Techs., Inc. v. Penske Truck Leasing Co., L.P.*, No. 4:14-CV-01305-RWS, 2018 WL 5078335, at *1 (E.D. Mo. Oct. 18, 2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012). "The inquiry envisioned by Rule 702 is a flexible one." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915 (8th Cir. Aug. 11, 2017), *as corrected* (Aug. 14, 2017). Moreover, "[t]he touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010).

Although the proponent of the expert testimony must prove its admissibility by a preponderance of the evidence, *Daubert*, 509 U.S. at 592, Rule 702 "is one of admissibility rather than exclusion." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). Proposed expert testimony "must be supported by appropriate validation—i.e., good grounds, based on what is known"; expert "knowledge connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590, 599 (citation omitted). But any "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

The Court has substantial discretion in determining whether expert testimony should be allowed. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). If the Court is "satisfied with the expert's knowledge, skill, experience, training, or education, and the expert's testimony is reasonably based on that expertise, admitting the testimony is not an abuse of discretion." *Am. Modern Home Ins. Co. v. Thomas*, No. 4:16-CV-00215-CDP, 2018 WL 4404723, at *1–2 (E.D. Mo. Sept. 17, 2018) (citing *Daubert*, 509 U.S. at 588–91 and *Weitz Co. v. MH Washington,* 631 F.3d 510, 527 (8th Cir. 2011)). An expert opinion should only be excluded if it is so fundamentally unsupported that it can offer no assistance to the jury. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007).

### III. Analysis

Defendants intend to call Philip Rosescu as an expert in this action. Plaintiff argues that Rosescu is unqualified, and further argues that his opinions would not assist the jury or are

4

unsupported (Docs. 101, 106).  The Court finds that Rosescu is qualified but will limit his testimony.

**A. Rosescu is qualified**

Rosescu is a civil engineer with a Bachelor and a Masters of Science in Civil Engineering from Loyola Marymount University (Doc. 101-2, hereinafter "CV").  Rosescu primarily does slip-and-fall and trip-and-fall cases which comprise 40-50% of his caseload (Doc. 101-22 at 97-98, hereinafter "Depo.").

Rosescu is a member of ASTM International, an international standards organization for a wide range of materials, products, systems, and services (CV; Doc. 101-3 at 2, hereinafter "Report"; Doc. 101-23 at 1).  He is on the ASTM F24 committee governing amusement rides and devices and the ASTM F24.70 subcommittee governing water-related amusement rides (CV; Depo. at 21; Doc. 111-1 at 1, hereinafter "Aff.").  Rosescu joined the ASTM F24 committee five to six years ago and couldn't exactly recall but probably joined the ASTM F24.70 subcommittee "years ago" (Depo. at 21).

While membership in ASTM International is open to anyone, membership on committees and subcommittees involves an approval process (Depo. at 21-22; Doc. 101-23 at 2).  The ASTM F24 committee has jurisdiction over the ASTM F2376 standard, the standard practice for classification, design, manufacture, construction, and operation of waterslide systems (Aff. at 1).  The ASTM F24.70 subcommittee proposes amendments or changes to the ASTM F2376 standard governing waterslide systems, which are then put to a vote (Depo. at 18-19).  Rosescu votes and takes part in the development of new iterations of the ASTM F2376 standard and the ASTM F770 standard, the standard practice for ownership, operation, maintenance, and inspection of amusement rides and devices (Aff. at 2; Depo. at 23-25).

5

Rosescu has investigated five incidents involving waterslides or water parks:

- *Riham Imbrahim, et al. v. Circus Circus Casinos, Inc.* – a waterslide incident involving materials being dropped by an attendant on top of a waterslide tower;

- Jeff Zambon – Plaintiff slid down a water slide and caught foot on grate at bottom of pool;

- *Jose Carlos Rosales v. Great Wolf Lodge* – Plaintiff's elbow hit brim of trap door on trap door-style waterslide;

- *Sami Karame v. Festival Fun Parks* – slip and fall near slide drop; and

- Daryn Smith – slip and fall on stairs going up to waterslide

(Aff. at 2; Depo. at 9-11). He has also investigated five incidents involving swimming pools or facilities, four incidents involving swimming facility decks and equipment, and five incidents involving amusement rides (Aff. at 2-3).[1]

Plaintiff argues that Rosescu is not qualified based on *Fosberg v. Tricam Industries, Inc.* and *Henderson v. United States*. *Fosberg v. Tricam Indus., Inc.*, 2021 WL 489060 (N.D. Tex. Feb. 10, 2021); *Henderson v. United States*, 2021 WL 22330 (C.D. Cal. Jan. 4, 2021). *Henderson* is inapposite because Rosescu's testimony was admitted and then rejected by the

---

[1] The Court notes that the additional information included in Rosescu's affidavit—originally filed as an unnotarized document (Doc. 102-3) in response to Plaintiff's motion to exclude, and later filed in notarized form (Doc. 111-1)—should have been disclosed earlier. This is not the only federal case in which an eleventh-hour document has been filed to bolster Rosescu's expertise. *See Fosberg v. Tricam Indus., Inc.*, No. 4:20-CV-126-A, 2021 WL 489060, at *2 (N.D. Tex. Feb. 10, 2021) (finding that information included in declaration to bolster Rosescu's expertise should have been provided in his report and could not be considered). The Court admonishes Defendants and Rosescu to include all pertinent information in reports as required by Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B) (setting forth the requisite contents of an expert report). However, given that his general expertise as a civil engineer and his participation in ASTM International were disclosed, and that he was deposed about his prior water slide investigations and testimony list, there is sufficient information for the Court to find him qualified.

court in a bench trial. 2021 WL 22330 at *3-4. In *Fosberg*, Rosescu's testimony was excluded. However, *Fosberg* was a products liability action involving a ladder with well-established caselaw as to what qualifies an expert. 2021 WL 489060 at *2. Here, Plaintiff does not allege that the waterslide itself was defective, but that it was being operated unsafely. Rosescu may testify based on his expertise in civil engineering and safety. *Cf. Pierre v. Hilton Rose Hall Resort & Spa*, 2016 WL 1228604, at *4 (E.D.N.Y. Mar. 28, 2016) (excluding plaintiff's expert, a self-employed owner of a pool service company with a high school diploma, in waterslide injury case, finding "[a]t best, Mr. Diamond's qualifications are limited to physically building a pool, a different task than designing a pool or a waterslide, which, as Mr. Diamond acknowledged at his deposition, he—unlike engineers or architects—is unqualified to do").

### B. Rosescu may testify as to visibility and ride duration

Opinion 2 is titled "The Guard Tower would have seen Plaintiff before Collin Descended" (Report at 2). This opinion is arguably mislabeled because Rosescu discusses how *Nimsgern* would have been able to see Plaintiff before descending (*id.* at 2-3). Plaintiff argues that the opinion should be excluded because it will not help the jury understand or determine a fact in issue, merely rehashes others' testimony, and asserts a fact not in dispute (Doc. 101 at 11). Rosescu conducted a site inspection on May 19, 2021 (Report at 2; Depo. at 16). He took photos, conducted a line of sight analysis, and took measurements (Depo. at 12). The Court finds that Rosescu may testify as to visibility based on his site inspection.

Opinion 3 is titled "At the Lowest Possible Speeds, Plaintiff Ride Duration Would Have Been At Maximum 7.84 Seconds" (Report at 3). Rosescu makes the following assumptions:

- Plaintiff enters the ride with a speed of 0

7

- Plaintiff exits the ride with the minimum speed of 25 feet per second, per standard ASTM F2376 4.1.7 which defines a "speed slide" as achieving a rider velocity of at least 25 feet per second

- Slide height is 34'9"

- Runout length is 63'6"

(*id.* at 3).  Using "kinetic equations," Rosescu concludes that Plaintiff entered the runout at 2.78 seconds and came to a complete stop at 7.84 seconds (*id.*).

At his deposition, Rosescu revised his ride duration calculation, testifying he "redid the numbers" and 9.5 seconds was the actual number (Depo. at 39).  He made a "silly little error" of assuming the distance traveled on the slide was the height of the slide rather than the diagonal length of the slide (*id.* at 42; Aff. at 4).  Rosescu had not provided Plaintiff with the equations which he estimated would be about a page and a half of calculations at most (Depo. at 40).  He believed the calculation had been done in a spreadsheet (*id.* at 39).  Rosescu testified he could provide the equations (*id.* at 40).

Plaintiff argues that the underlying equations were never disclosed, that Rosescu's initial calculation was incorrect, and that therefore his opinion is not reliable (Doc. 101 at 13).  Rosescu's report included that he used "kinetic equations" to arrive at Opinion 3 (Report at 3).  Plaintiff had the opportunity to explore the "kinetic equations" at his deposition and Rosescu testified he could provide the equations (Depo. at 40).

"'[M]ere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony.'" *David E. Watson*, 668 F.3d 1008, 1015 (8th Cir. 2012) (quoting *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007)); *S.E.C. v. Das*, 723 F.3d 943, 951 (8th Cir. 2013) (same).  The court is concerned with the soundness of the expert's methodology, not the correctness of the result.  *Daubert*, 509 U.S. at 595.  Imperfect execution of a reliable

8

method should normally be challenged by vigorous cross-examination or competing expert testimony. *See Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 89 (1st Cir. 2017). The Court finds Rosescu may testify as to ride duration.

Plaintiff further asserts that the revised calculation was never provided to counsel (Doc. 101 at 13). Defendants should have provided the revised calculation to Plaintiff's counsel rather than Rosescu mentioning it in response to questioning at his deposition (Depo. at 40-42). But Defendant has corrected the calculation prior to pretrial disclosures. *See* Fed. R. Civ. P. 26(e)(2) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.").

**C. Rosescu may testify as to safety standards and whether Nimsgern violated them**

Opinion 4 is titled "Injury to Plaintiff would not have Occurred if Collin Nimsgern had followed the Defendant Mark Twain Water Zone Safety Rules" (Report at 3). In support, Rosescu recites the MTWZ safety rules Nimsgern broke and concludes that if Nimsgern had waited for lifeguard approval consistent with the safety rules, the lifeguard would have verified that the runout was clear (*id.* at 3-4). Plaintiff argues that the opinion should be excluded because it is not reliable since Rosescu makes the assumption that Nimsgern was aware of the safety rules (Doc. 101 at 13-14).

Plaintiff's objection is better directed at Opinion 5, titled "It is Reasonable to Assert that Collin Nimsgern was Aware of his Patron Responsibility and Neglected his Responsibility, and in doing so, injured Plaintiff" (Report at 4). In support, Rosescu cites the ASTM F770 9.1 standard which states that patrons have a duty to exercise good judgment and act in a responsible

9

manner while using the amusement ride, device, or attraction and to obey all oral or written warnings, or both, prior to or during participation, or both (*id.*). He cites Plaintiff's expert's testimony that patrons are responsible for following rules they are aware of, and concludes "[b]ased off of Collin Nimsgern's testimony and actions, it is reasonable to assert that he was aware of his patron responsibility of waiting for lifeguard approval before going down the slide" (*id.*).

The Court finds that Rosescu may testify to safety standards and whether Nimsgern violated them. He may rely on facts from Nimsgern's deposition. However, he may not give an ultimate opinion as to what Nimsgern was actually aware of, which is in dispute. Plaintiff asserts that Nimsgern got his wristband from his friend's parents in a hotel room, such that he would not have been aware of the rules, and that a Caution sign has not been factually established as being in place at the time of the incident (Doc. 101 at 14-15). Indeed, at his deposition, Rosescu testified that he was not aware if Nimsgern saw the safety rules or not (Depo. at 44). Rosescu has no special expertise that would warrant an opinion as to Nimsgern's awareness. *See Fontaine v. Columbia Properties Ozarks, Ltd.*, No. 2:15-CV-04213-NKL, 2016 WL 6542858, at *3–4 (W.D. Mo. Nov. 3, 2016) (finding civil engineer had no basis for testifying as to the lighting at the time of the incident and what was within the plaintiff's peripheral vision).

Finally, under the heading of Opinion 5, Rosescu includes additional opinions that: a barrier, chain, or other blocking mechanism would not prevent a "determined rider"; it would be unreasonable for a lifeguard to attach and detach such a mechanism all day; a tower guard standing in the dispatch tub would not prevent a "determined rider"; and a tower guard standing in the dispatch tub could place the guard in a potentially hazardous situation if the rider tried to force their way past (Report at 4). Plaintiff's expert opined that if Defendants had used a barrier

10

Plaintiff would not have been injured (Doc. 101 at 17). The Court will take up those opinions in motions in limine as needed.

### D. Rosescu may not testify that Nimsgern was the sole cause of Plaintiff's injuries

Opinion 7 is titled "Collin Nimsgern Violated Multiple of Defendant's Safety Rules and Violated his Patron Responsibility, and in doing so, Subsequently Injured Plaintiff Melissa Saulsberry" (Report at 4). Rosescu opines that "[h]ad Collin taken his patron responsibility and due diligence properly as he had earlier in the day, he would have waited for lifeguard approval before going" and "Collin Nimsgern did not wait an exorbitant amount of time and the lifeguard was not inhibiting patron use to the point where Collin should have felt he was ok to go" (*id.* at 5). Rosescu concludes, "It is my opinion, based on the facts and evidence presented in this report, that Collin Nimsgern violated multiple safety rules and standards, neglected his patron responsibility, caused the injury of Plaintiff soley on his own accord" (*id.*). Plaintiff argues that the opinion should be excluded as essentially a summary of Rosescu's prior opinions (Doc. 101 at 18-19).

As set forth above, Rosescu may testify to safety standards and whether Nimsgern violated them. However, Rosescu may not testify that Nimsgern was the sole cause of Plaintiff's injuries. That opinion is unsupported. His report does not address other potential causes and focuses almost exclusively on Nimsgern's fault. For example, he does not go through an analysis of whether Defendants complied with existing safety rules and regulations, beyond opining that there were no code violations and one tower guard was sufficient, and both of those opinions, as they appeared in the report, were based exclusively on the testimony of other witnesses, as discussed infra. *Cf. Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000) (affirming exclusion of causation opinion where physician acknowledged that he made no

11

attempt to consider all possible causes, to exclude each potential cause until only one remained, or to consider which of two or more non-excludable causes was the more likely, and physician arrived at his opinion in an "ad hoc" manner); *Mascarenas v. Miles, Inc.*, 986 F. Supp. 582, 590 (W.D. Mo. 1997) (finding causation opinions inadmissible because "plaintiff's experts have not ruled out, let alone attempted to rule out, any other possible causes"); *see also Daubert*, 509 U.S. at 593 (noting expert opinions generated as a result of litigation have less credibility than opinions generated outside of litigation).

### E.  Rosescu's opinion as to code violations will be excluded

Opinion 1 is titled "The Subject Slide was in No Code Violations at the Time of Incident" (Report at 2).  The only elaboration in the report is: "Maria Bella, Plaintiff expert, testified that she had not been able to find any state, county, or local code violation for the subject slide both before and after the incident" (*id.*).  At his deposition, Rosescu testified that he looked online and at the building code, looked into municipal and city codes, determined what codes were adopted, determined if there was anything the subject slide violated, and found there was not (Depo. at 35).  His research was not listed under "Evidence Reviewed" in his report (Report at 2).

Plaintiff argues that the opinion should be excluded because it will not help the jury understand or determine a fact in issue (Doc. 101 at 9).  Plaintiff also argues that it should be excluded because Rosescu's failure to list his research is a violation of Rule 26(a)(2)(B)(ii) (*id.* at 10).  For the following reasons, the Court will exclude Opinion 1 as a sanction for violating Rule 26(a)(2)(B)(ii).

Where a report is required, the expert witness disclosure must be accompanied by a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  When a party

12

fails to provide information in compliance with Rule 26(a), the Court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (citing Fed. R. Civ. P. 37(c)(1)); *see also Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011) ("Rule 37(c)(1) 'gives teeth' to the written report requirement of Rule 26(a)(2)(B)."). Courts have prevented an expert from testifying when the written report failed to provide the basis and reasons for the expert's opinions. *See, e.g., Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998) ("Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions.") (citing *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996)); *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996); *Reynolds v. Freightliner LLC*, 2006 WL 5249744, at *5 (E.D. Ky. June 21, 2006) ("Those courts considering the implication of Rule 37 on the Rule 26 expert requirements consistently hold that exclusion is an appropriate remedy well within the Court's discretion.").

A deposition may not cure the omission. *See Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (finding sketchy, vague expert affidavit forced opposing party to depose expert to determine his qualifications and the basis for his opinion, frustrating the purposes of Rule 26(a)(2)(B)); *Meyer v. Currie Tech Corp.*, 329 F.R.D. 228, 231–35 (D. Neb. 2018) (finding failure to disclose methodology in report was not harmless because counsel was limited in their ability to prepare for deposition); *Grant v. Pharmavite, LLC*, No. 8:05CV66, 2006 WL 5171681, at *1 (D. Neb. May 23, 2006) (excluding opinions notwithstanding deposition because the report failed to provide the basis and reasons for the opinions); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (concluding a deficient expert report was

13

not harmless because the deficiencies forced the other party to depose the expert "with little or no understanding as to what he would testify [to]").

Here, Rosescu exclusively cited to *Plaintiff's expert's* opinion and entirely failed to disclose any independent basis for the opinion in his report. The Court finds the omission was neither substantially justified nor harmless. At his deposition, Rosescu testified that he did not remember exactly where he looked during the search he failed to disclose in his report (Depo. at 35). Opinion 1 will be excluded.

### F. Rosescu's opinion as to one tower guard being sufficient lacks a sufficient basis

Opinion 6 is titled "The Slide Tower was able to be Operated with One Person" (Report at 2). As with Opinion 1, the only elaboration in the report is: "Tonya Pryor, Co-Manager of the water park, testified that if only one lifeguard was on duty on the tower, they would have the ability to still run both slides by staying in the middle of the slides and running one slide at a time" (*id.*). The opinion appears to be nothing more than a re-statement of the testimony of Tonya Pryor, which Rosescu acknowledged at his deposition "speaks for itself" (Depo. at 56).

In his eleventh-hour affidavit, Rosescu attempts to resuscitate the opinion, stating "It is my opinion that, having reviewed the evidence, that the tower for the Purple Slide could be operated by one person because: (1) the lack of prior injuries or incidents; (2) Tonya Pryor's testimony on that issue; and (3) the ability of a tower guard to see the slide runouts for the Purple Slide and Orange Slide" (Aff. at 5). From his deposition it would appear that the lack of prior injuries or incidents to which Rosescu refers is a lack of prior injuries or incidents *that day*, the day of the incident at issue in this action (Depo. at 56, 59). The additional information in Rosescu's affidavit "only serve[s] to illustrate the deficiencies in [the] initial disclosures." *Meyer*, 329 F.R.D. at 234.

14

The Court notes that, as with Opinion 1, Rosescu exclusively cited to Pryor's testimony and entirely failed to disclose any independent basis for the opinion in his report. Had Plaintiff similarly argued that this opinion should be excluded due to the Rule 26(a) violation, the Court would have agreed.

In any event, the Court agrees with Plaintiff that Opinion 6 lacks a sufficient basis. The ASTM 770 standard requires that, for waterslides, the owner/operator have specific operation policies and procedures with pertinent information from the manufacturer's instructions, including dispatch procedures, and that there be verbal instructions when required by the manufacturer (Doc. 101-5 at 7). Rosescu was not provided with the manufacturer specifications for the slide at issue (Depo. at 62). It appears that no one knows who manufactured the slide (*id.* at 63). Thus, in addition to Pryor's testimony, which speaks for itself, the only support Rosescu cites for his opinion—support not included in his report—is the fact that there were no other incidents that day and the visibility of the tower guard. Those facts alone do not adequately support his opinion, which the Court agrees is a mere rehashing of Pryor's testimony. *See Simon v. Select Comfort Retail Corp.*, No. 4:14-CV-1136 JAR, 2016 WL 160643, at *4 (E.D. Mo. Jan. 14, 2016) ("[A]n expert [is not permitted] to simply 'parrot' [others'] opinions").

### G. Rosescu may not testify as to disputed facts without a sufficient basis

There are several instances in his report and deposition in which Rosescu opines about disputed facts without a sufficient basis, for example, concluding that Nimsgern was aware of his patron responsibility (Report at 3-4), as discussed supra, or concluding that the tower guard was not on his cell phone at the time of the incident (Report at 3; Depo. at 36-37). Under Opinion 2, Rosescu includes testimony from Matthew Backer, the patron who went down the slide before Plaintiff, that the tower guard was not on her cell phone and was doing her job (Report at 3;

15

Depo. at 36-37).  At his deposition, Rosescu seemed to offer an opinion that the tower guard was not on her cell phone at the time of the incident, despite acknowledging that Backer would not have been able to say with accuracy what the guard was doing after he went down the slide (Depo. at 36-37).  Any opinion that the tower guard was not on her cell phone at the time of the incident is excluded.  *See Fontaine*, 2016 WL 6542858 at *3–4 (finding civil engineer had no basis for testifying as to what was within the plaintiff's peripheral vision where the plaintiff testified that she could not say where she was looking at the time of her fall and the engineer testified he was simply putting himself in her shoes and guessing based on common sense).  The Court admonishes Rosescu to offer opinions within his expertise, rather than merely restating testimony or drawing conclusions about disputed facts that bear no relation to his expertise.

## IV.  Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Exclude the Testimony of Philip Rosescu (Doc. 100) is **GRANTED in part and DENIED in part**, as set forth in this Memorandum and Order.

Dated this 3rd day of August, 2022.

                                                   /s/ Noelle C. Collins  
                                                   NOELLE C. COLLINS  
                                                   UNITED STATES MAGISTRATE JUDGE